

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|  |  |
|---|---|
| ALABAMA COALITION FOR IMMIGRANT JUSTICE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WES ALLEN, in his official capacity as Alabama Secretary of State, *et al.*, <br><br> Defendants. | Case No. 2:24-cv-1254 (AMM) |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF ALABAMA and WES ALLEN, in his official capacity as Alabama Secretary of State, <br><br> Defendants. | Case No. 2:24-cv-1329 (AMM) |

## STATEMENT OF INTEREST OF THE UNITED STATES

# TABLE OF CONTENTS

I.   INTRODUCTION..............................................................................................1

II.   INTEREST OF THE UNITED STATES ...........................................................2

III.  FACTUAL AND PROCEDURAL BACKGROUND ........................................2

IV.  STATUTORY BACKGROUND.......................................................................3

V.   LEGAL STANDARD.......................................................................................4

VI.  ARGUMENT ...................................................................................................5

   A.   Section 11(b) of the Voting Rights Act is Enforceable by Private
       Plaintiffs. ....................................................................................................5

     1.   Section 11(b) Confers an Individual Right. ...............................................6

     2.   Defendants Have Not Rebutted the Presumption that Section 11(b) Is
         Privately Enforceable Through Section 1983. ..........................................7

       a.   Congress Intended a Private Right of Action for Section 11(b). ..........8

       b.   The History of the VRA also Indicates that Congress Intended to
          Create a Section 11(b) Private Right of Action. ................................12

   B.   Section 11(b) Does Not Require Proof of Subjective Intent. .....................14

     1.   Section 11(b)'s Text Does Not Require Proof of Intent............................14

     2.   The Legislative History Confirms that Section 11(b) Purposefully
         Omits any Intent Requirement. ...............................................................16

     3.   Courts Have Confirmed that 11(b) Has No Intent Requirement..............17

CONCLUSION ..................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ..............................................................9

*Allen v. City of Graham*, Nos. 1:20-CV-997, 1:20-CV-998, 2021
   WL 2223772 (M.D.N.C. June 2, 2021) ...................................................... 17, 21

*Allen v. State Bd. of Elections*, 393 U.S. 544 (1969) ........................... 13, 15, 16, 17

*Alpha Phi Alpha Fraternity, Inc. v. Raffensperger*, 587 F. Supp.
   3d 1222 (N.D. Ga. 2022) ......................................................................................15

*Ariz. Democratic Party v. Ariz. Republican Party*, No. CV-16-03752,
   2016 WL 8669978 (D. Ariz. Nov. 4, 2016) ................................................. 17, 20

*Ark. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023) ............15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................8

*Belanger v. Salvation Army*, 556 F.3d 1153 (11th Cir. 2009) ...................................8

*Blessing v. Freestone*, 520 U.S. 329 (1997) ..................................................... 10, 11

*Bowles v. DeSantis*, 934 F.3d 1230 (11th Cir. 2019) ..............................................10

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ............................22

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) ..................................................14

*Coca v. City of Dodge City*, 669 F. Supp. 3d 1131 (D. Kan. 2023) .......................15

*Colo. Mont. Wyo. State Area Conf. of the NAACP v. U.S. Election
   Integrity Plan*, 653 F. Supp. 3d 861 (D. Colo. 2023) ................................. 10, 17

*Daschle v. Thune*, No. 04-cv-4177, ECF No. 6 (D.S.D. Nov. 2, 2004) ..................21

*Fair Fight Inc. v. True the Vote*, 710 F. Supp. 3d 1237 (N.D. Ga. 2024) ..............18

*Georgia State Conf. of NAACP v. Georgia*, 2022 WL 18780945
   (N.D. Ga. Sept. 26, 2022) ....................................................................................15

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ........................................................9, 11

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023) ..........9, 11

*Jackson v. Riddell*, 476 F. Supp. 849 (N.D. Miss. 1979) .........................................7

*League of United Latin Am. Citizens v. Pub. Int. Legal Found.*,
   No. 18-cv-423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018) ..................... 19, 20

*Mich. Welfare Rts. Org. v. Trump*, 600 F. Supp. 3d 85 (D.D.C. 2022) ...................17

*Morse v. Republican Party of Va.*, 517 U.S. 186 (1996) ........................ 5, 14, 15, 16

*Nat'l Coal. on Black Civic Participation v. Wohl ("Wohl I")*,
   498 F. Supp. 3d 457 (S.D.N.Y. 2020) ............................................................ passim

*Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp.
   3d 500 (S.D.N.Y. 2021) (*Wohl II*) .........................................................................7

*Newman v. Piggie Park Enters.*, 390 U.S. 400 (1968) ............................................14

*Olagues v. Russoniello*, 770 F.2d 791 (9th Cir. 1985) ............................................18

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601 (2019) .....................18

*Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005)...........................................11
*Rhodes v. Siver*, No. 19-cv-12550, 2021 WL 912393
  (E.D. Mich. Mar. 10, 2021) ............................................................................17
*Robinson v. Ardoin*, 86 F.4th 574 (5th Cir. 2023) ....................................................15
*Schilling v. Washburne*, 592 F. Supp. 3d 492 (W.D. Va. 2022).............................14
*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ...................................... 11, 14, 15
*Shelby Cnty. v. Lynch*, 799 F.3d 1173 (D.C. Cir. 2015) .........................................14
*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007).............................8
*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015)........................................................................................17
*United States v. Brown*, 974 F.3d 1137 (10th Cir. 2020) ......................................18
*Vote.Org v. Callanen*, 89 F.4th 459 (5th Cir. 2023) ..............................................13

## Federal Statutes

1 U.S.C. § 1 ..................................................................................................................9
28 U.S.C. § 517 ...........................................................................................................2
52 U.S.C. § 10101(b) ................................................................................................15
52 U.S.C. § 10307(b) ..................................................................................... passim
52 U.S.C. § 10308(d) ...................................................................................................2
52 U.S.C. § 10308(f) ....................................................................................................9
52 U.S.C. § 10310(c)(1)...........................................................................................4, 7
52 U.S.C. § 10310(e) .................................................................................................10

## Federal Legislative Materials

H.R. Rep. No. 89-439, at 30 (1965)....................................................................7, 20
S. Rep. No. 94-295 (1975) .................................................................................. 12, 16
*Voting Rights Act of 1965: Hr'g Before the H. Comm. on the*
  *Judiciary*, 89th Cong. 3 ............................................................................. 12, 20

## I.     INTRODUCTION

The United States submits this Statement of Interest to address issues related to the scope and enforcement of Section 11(b), which Defendants raise in their motion to dismiss.  *See* Defs. Ala. Att'y Gen. and Sec'y State Wes Allen's Mot. Dismiss 32-35, *Ala. Coal. for Immigrant Just. v. Allen*, No. 2:24-cv-1254, ECF No. 50.  First, Section 11(b) is enforceable by private plaintiffs.  The Supreme Court has consistently held that private litigants can enforce other provisions of the Voting Rights Act (VRA) that also lack an express private right of action.  *See e.g.*, *Morse v. Republican Party of Va.*, 517 U.S. 186, 233-34 (1996) (opinion of Stevens, J.).  Guided by the VRA's text and structure, nearly every court to consider the issue has concluded that Congress intended private parties to enforce Section 11(b) as well.  *See, e.g.*, *Nat'l Coal. on Black Civic Participation v. Wohl* *("Wohl I")*, 498 F. Supp. 3d 457, 476 (S.D.N.Y. 2020).  Second, Section 11(b) does not require proof that a defendant intended to intimidate a voter; in fact, the provision was enacted chiefly to do away with an intent element that had rendered a prior voter intimidation statute less than fully effective.  *See e.g.*, *Wohl I*, 498 F. Supp. 3d at 485.  Holding otherwise on either issue would frustrate the VRA's core purpose: protecting the right to vote.

## II.    INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States."  Defendants' motion to dismiss presents important questions regarding the interpretation of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b).  Congress has vested the Attorney General with authority to enforce Section 11(b) on behalf of the United States. See 52 U.S.C. § 10308(d).  Accordingly, the United States has a substantial interest in ensuring the proper interpretation of Section 11(b).  The United States takes no position on the merits of Private Plaintiffs' Section 11(b) claim.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

Individual voters and civil rights groups (Private Plaintiffs) filed suit on September 13, 2024, challenging the Alabama Secretary of State's voter registration list maintenance program (the Program) announced on August 13, 2024—84 days before the November 5, 2024, federal general election.  Compl., *Ala. Coal. for Immigrant Just. v. Allen*, No. 2:24-cv-1254 (*ACIJ*), ECF No. 1.[1]

---

[1] Private Plaintiffs' suit has since been consolidated with United States' complaint challenging the Program only under the Quiet Period Provision of the NVRA, 52 U.S.C. § 20507(c)(2)(A). *See* Order, *Ala. Coal. for Imm. Justice v. Allen*, No. 2:24-cv-1254, ECF No. 45; *United States v. Alabama*, No. 2:24-cv-1329, ECF No. 2.

Private Plaintiffs allege that the Program, which the Alabama Secretary of State labeled a "Process to Remove Noncitizens registered to vote in Alabama," violates the First and Fourteenth Amendments of the United States Constitution, the National Voter Registration Act (NVRA), and the Voting Rights Act (VRA), Compl. ¶ 15, *ACIJ* ECF No. 1.  Private Plaintiffs have moved for entry of a preliminary injunction.  Private Pls.' Mot. Prelim. Inj., *ACIJ* ECF No. 23. Defendants moved to dismiss Private Plaintiffs' complaint on October 3.  Defs.' Mot. Dismiss, *ACIJ* ECF No. 50.

## IV.   STATUTORY BACKGROUND

Section 11(b) of the Voting Rights Act states:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under [certain sections of the Voting Rights Act].

52 U.S.C. § 10307(b).  This broad prohibition against actual or attempted intimidation, threats, and coercion contains no exceptions or limitations.  Nor does its plain language require proof of racial motivation or "subjective purpose or intent."  H.R. Rep. No. 89-439, at 30 (1965), *as reprinted in* 1965 U.S.C.C.A.N. 2437, 2462.  Similarly, Section 11(b) does not require proof that a defendant caused a voter to refrain from casting a ballot or to vote contrary to their

preferences: the provision applies equally to prohibit an "attempt to intimidate, threaten, or coerce" as it does to the completed act. 52 U.S.C. § 10307(b); *see Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 516 (S.D.N.Y. 2021) (*Wohl II*).  Section 11(b) "is to be given an expansive meaning," *Jackson v. Riddell*, 476 F. Supp. 849, 859 (N.D. Miss. 1979), and incorporates the comprehensive definition of "vote" and "voting" in Section 14 of the Voting Rights Act, 52 U.S.C. § 10310(c)(1).[2]

## V.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted); *see also Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009) (construing allegations in a complaint "in the light most favorable to the plaintiff").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[2] 52 U.S.C. § 10310(c)(1) states:

The terms "vote" or "voting" shall include all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.

liable." *Iqbal*, 556 U.S. at 678.  Consideration of information outside the face of the complaint is limited to "documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  So long as these materials allow a court to "draw the reasonable inference that the defendant is liable," the motion must be denied.  *Iqbal*, 556 U.S. at 678.

## VI.   ARGUMENT

### A.   Section 11(b) of the Voting Rights Act is Enforceable by Private Plaintiffs.

Private plaintiffs may enforce Section 11(b) directly through the provision's implied private right of action or through Section 1983.  Under both inquiries, courts "must first determine whether Congress intended to create a federal right." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (emphasis in original).  And to establish an implied right of action, plaintiffs must also show congressional intent to create "a private remedy." *Id.* at 284 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  Section 11(b) meets both criteria.  Though Section 11(b) does not expressly provide a private right of action, that right is inherent in the VRA's text, structure, and history.

Where a statute, like Section 11(b), creates a private right, that statute is presumptively enforceable under Section 1983.  *Gonzaga Univ.*, 536 U.S. at 284;

*accord Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 184

(2023).  Defendants fail to rebut that presumption here.

### 1.  Section 11(b) Confers an Individual Right.

When determining whether a federal statute creates a federal right, courts

consider three factors: (1) whether Congress "intended that the provision in

question benefit the plaintiff"; (2) whether "the right assertedly protected by the

statute is not so 'vague and amorphous' that its enforcement would strain judicial

competence"; and (3) whether the statute "unambiguously impose[s] a binding

obligation on the States."  *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997); *see*

*also Bowles v. DeSantis*, 934 F.3d 1230, 1239-45 (11th Cir. 2019) (applying

*Blessing* test).

First, Section 11(b) indisputably contains rights-creating language.  The text

provides that no one "shall intimidate, threaten, or coerce, or attempt to intimidate,

threaten, or coerce any person for voting or attempting to vote … any person for

urging or aiding any person to vote or attempt to vote … [or] any person for

exercising any powers or duties under" certain provisions of the VRA.  52 U.S.C. §

10307(b).  The statute's text thus grants individual citizens a right to be free from

intimidation, threats, and coercion in voting, and it specifies individuals protected

by the provision—those who are "voting or attempting to vote," "urging or aiding

any person to vote or attempt to vote," or "exercising any powers or duties under"

the VRA.  *Id.*; *see also Colo. Mont. Wyo. State Area Conf. of the NAACP v. U.S. Election Integrity Plan*, 653 F. Supp. 3d 861, 868 (D. Colo. 2023).  The VRA's definitions of "vote" and "voting" further delineate the beneficiaries of the provision: anyone who is taking any "action necessary to make a vote effective" is entitled to be free from intimidation, threats, and coercion while engaging in those activities.  52 U.S.C. § 10310(c)(1).  It is beyond question that Section 11(b) was intended to benefit plaintiffs subject to alleged voter intimidation.

As for the second and third *Blessing* factors, Section 11(b) "clearly provides rights which are specific and not amorphous," and "the language of the statute is mandatory rather than precatory": "*No person*, *whether acting under color of law or otherwise*, *shall* intimidate, threaten, or coerce."  *Schwier v. Cox*, 340 F.3d 1284, 1297-98 (11th Cir. 2003) (also holding that the Materiality Provision of the Civil Rights Act of 1964 satisfies the *Blessing* test); 52 U.S.C. § 10307(b) (emphasis added).  Section 11(b) thus confers an individual right.

### 2.  Defendants Have Not Rebutted the Presumption that Section 11(b) Is Privately Enforceable Through Section 1983.

"Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by [Section] 1983."  *Gonzaga Univ.*, 536 U.S. at 284; *accord Talevski*, 599 U.S. at 184.  That presumption is rebuttable only where a defendant shows "that Congress did not intend that remedy."  *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005).  A defendant may demonstrate

congressional intent by pointing to explicit disavowal of Section 1983 enforcement, or by proving an inference of disavowal "from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under [Section] 1983.'" *Id.* (quoting *Blessing*, 520 U.S. at 341). Defendants have not done so here. Nor could they: Section 11(b) contains no language even suggesting an intent to preclude private enforcement through Section 1983.

### a. Congress Intended a Private Right of Action for Section 11(b).

The VRA's plain text and structure demonstrate Congress's intent to create a private remedy for Section 11(b) violations. Section 3 of the VRA provides for certain remedies in actions brought by "the Attorney General *or an aggrieved person* . . . under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(a), (c) (emphasis added); see also S. Rep. No. 94-295, at 40 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 774, 806-07 ("An 'aggrieved person' . . . may be an individual or an organization representing the interests of injured persons."). That Section 3 provides remedies for "aggrieved person[s]" to enforce the voting guarantees of the Reconstruction Amendments evinces Congress's intent to allow private enforcement of Section 11(b), which aimed at ensuring that the "theoretical right to vote was [not] successfully thwarted by intimidation." *See Voting Rights Act of 1965: Hr'g Before*

*the H. Comm. on the Judiciary*, 89th Cong. 3; *see also* S. Rep. No. 94-295, at 40 (1975) ("The Committee concludes that it is sound policy to authorize private remedies to assist the process of enforcing voting rights.").

Likewise, Section 12(f) of the VRA provides that United States district courts "shall have jurisdiction of proceedings instituted pursuant to [Section 12] and shall exercise the same without regard to whether *a person* asserting rights under the provisions of [the VRA] shall have exhausted any administrative or other remedies that may be provided by law."  52 U.S.C. § 10308(f) (emphasis added). The statutory term "person" "include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as *individuals*."  1 U.S.C. § 1 (emphasis added).  The relief from any obligation to exhaust administrative remedies further contemplates private enforcement.  *See Vote.Org v. Callanen*, 89 F.4th 459, 475 (5th Cir. 2023) (finding similar language in the 1957 amendments to the Civil Rights Act to correspond with a private right).  Section 12(f) therefore reflects Congress's intent that federal courts have subject matter jurisdiction over suits to enforce the VRA's substantive provisions—including Section 11(b)—brought by both private plaintiffs and the United States.  *See Allen v. State Bd. of Elections*, 393 U.S. 544*,* 555 n.18 (1969) (finding "force" to the argument that Section 12(f) "necessarily implies that private parties may bring suit under the Act").

9

Section 14(e) of the Voting Rights Act similarly allows for "the prevailing party, *other than the United States*" to seek attorneys' fees "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment."  52 U.S.C. § 10310(e) (emphasis added).  That the VRA provides for fees to non-governmental parties prevailing in voting rights litigation supports the existence of a private cause of action to enforce its core provisions, including Section 11(b).  *See Morse*, 517 U.S. at 233-34 (opinion of Stevens, J.) (finding that Section 10 of the VRA is privately enforceable because, in part, the VRA allowed the prevailing party to collect attorneys' fees); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 699-701 (1979) (finding an implied private cause of action under Title VI of the Civil Rights Act of 1964 based on the existence of an attorneys' fees provision); *see also Shelby Cnty. v. Lynch*, 799 F.3d 1173, 1185 (D.C. Cir. 2015) ("Congress intended for courts to award fees under the VRA . . . when prevailing parties helped secure compliance with the statute."); *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968) ("Congress therefore enacted the provision for counsel fees . . . to encourage individuals injured by racial discrimination to seek judicial relief").

Defendants rely upon an out-of-circuit decision to posit that the VRA's express mechanisms allowing enforcement by the Attorney General precludes private enforcement of Section 11(b).  Defs.' Mot. Dismiss 33 (citing *Schilling v.*

10

*Washburne*, 592 F. Supp. 3d 492, 498-99 (W.D. Va. 2022)).  But that notion

ignores the provision's rights-creating language, *see supra* Section I.A, and flouts

several decisions from both the Eleventh Circuit and other courts that have found a

private right of action to exist for federal voting rights claims in conjunction with

the Attorney General's enforcement authority.  *See, e.g.*, *Schwier*, 340 F.3d at 1295

(holding that Congress did not "mean[] merely to substitute one form of protection

for another" in authorizing the Attorney General to bring suit for violations of the

Civil Rights Act's Materiality Provision).  For instance, the Supreme Court in

*Allen* determined that the possibility of Section 5 enforcement by the Attorney

General did not preclude enforcement by private citizens and held that Section 5

contains an implied private right of action.  *Allen*, 393 U.S. at 556-57.  The

Supreme Court noted that because "[t]he Attorney General has a limited staff and

often might be unable to uncover quickly" new violations, "[i]t is consistent with

the broad purpose of the Act to allow the individual citizen standing to insure that

his city or county government complies with the s[ection] 5 approval

requirements." *Id.* at 556-57.  The Court has also found that Section 10 of the

VRA contains an implied private right of action, even though it contains an express

right of action for the Attorney General.  *Morse*, 517 U.S. at 230-35 (opinion of

Stevens, J.); *id.* at 240 (Breyer, J., concurring); *see also Schwier*, 340 F.3d at 1294-95.[3]

VRA provisions granting enforcement authority to the Attorney General do not preclude an implied private right of action; rather, these provisions merely reflect that Congress had to explicitly provide such authority to the Attorney General, who cannot otherwise sue to enforce individual rights.  *See Allen*, 393 U.S. at 555 n.18 (finding "merit in the argument that the specific references to the Attorney General [in the VRA] were included to give the Attorney General power to bring suit to enforce what might otherwise be viewed as 'private' rights.").

### b.  The History of the VRA also Indicates that Congress Intended to Create a Section 11(b) Private Right of Action.

The "contemporary legal context" surrounding the VRA's enactment—including that it was passed "against a 'backdrop' of decisions in which implied causes of action were regularly found," *Morse*, 517 U.S. at 231 (opinion of

---

[3] Defendants also rely on the Eighth Circuit's decision in *Ark. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204, 1209 (8th Cir. 2023) to argue that Section 11(b) does not confer rights to any identifiable class, and suggest that "ambiguity precludes enforceable rights."  Defs.' Mot. Dismiss 33.  The Eighth Circuit's decision, decided in the context of Section 2 of the VRA, is an outlier whose reasoning has not been adopted by other courts.  *See, e.g., Robinson v. Ardoin*, 86 F.4th 574, 587-88 (5th Cir. 2023) (holding that private plaintiffs have a private right of action under Section 2 of the Voting Rights Act); *Alpha Phi Alpha Fraternity, Inc. v. Raffensperger*, 587 F. Supp. 3d 1222, 1243 n.10 (N.D. Ga. 2022) (finding that the district court decision in *Ark. NAACP* did not change its previous holding that Section 2 has a private right of action); *Coca v. City of Dodge City*, 669 F. Supp. 3d 1131, 1138 (D. Kan. 2023) (motion to certify appeal denied, 2023 WL 3948472, at *2-3 (D. Kan. Jun. 12, 2023)); *Georgia State Conf. of NAACP v. Georgia*, 2022 WL 18780945, at *3-7 (N.D. Ga. Sept. 26, 2022) (three-judge court).  The Court should decline to extend its reasoning here.

Stevens, J.)—also shows that Congress contemplated private enforcement of Section 11(b).  When Congress reenacted and extended the VRA in 1975, it confirmed its intent to maintain "a dual enforcement mechanism" that has "given enforcement responsibility to a governmental agency, and . . . has also provided remedies to private persons acting as a class or on their own behalf."  S. Rep. No. 94-295, at 40.  Moreover, "during the 1960s[,] the [Supreme] Court had consistently found [private rights of action] notwithstanding the absence of an express direction from Congress."  *Morse*, 517 U.S. at 231 (opinion of Stevens, J.).  Congress was "aware of this unanimous precedent" when it enacted Section 11(b).  *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 536 (2015).   Following the passage of the VRA, the Supreme Court has consistently recognized that Congress intended the VRA to empower private citizens to secure their own rights.  *See Allen*, 393 U.S. at 554-57.

Against this backdrop, the overwhelming majority of courts have properly recognized that a private right of action exists to enforce Section 11(b).  *See, e.g.*, *U.S. Election Integrity Plan*, 653 F. Supp. 3d at 868 ("Section 11(b) can be enforced through a civil action by a private individual."); *Mich. Welfare Rts. Org. v. Trump*, 600 F. Supp. 3d 85, 104-06 (D.D.C. 2022) (conducting an exhaustive analysis and holding that Section 11(b) "creates a private right of action"); *Allen v. City of Graham*, Nos. 1:20-CV-997, 1:20-CV-998, 2021 WL 2223772, at *7

(M.D.N.C. June 2, 2021) (noting that "multiple courts" have deemed Section 11(b) to "establish[] a private cause of action"); *Rhodes v. Siver*, No. 19-cv-12550, 2021 WL 912393, at *2 (E.D. Mich. Mar. 10, 2021) (holding that private plaintiffs can sue under Section 11(b)); *Wohl I*, 498 F. Supp. 3d at 476 ("Consistent with Section 11(b)'s broad reach, both the government and private parties may sue to enforce Section 11(b)."); *Ariz. Democratic Party v. Ariz. Republican Party*, No. CV-16-03752, 2016 WL 8669978, at *4 (D. Ariz. Nov. 4, 2016) (stating that Section 11(b) "does not exclude a private right of action for injunctive relief"); *Olagues v. Russoniello*, 770 F.2d 791, 805 (9th Cir. 1985) (finding an implied private right of action for equitable relief under Section 11(b)).

### B.    Section 11(b) Does Not Require Proof of Subjective Intent.

Defendants rely on a single district court decision to suggest that Section 11(b)'s text contains an implicit requirement that plaintiffs show an "intent to deter the exercise of voting rights."  *See* Defs.' Mot. Dismiss 35 (citing *Fair Fight Inc. v. True the Vote*, 710 F. Supp. 3d 1237, 1283 (N.D. Ga. 2024)).  To the contrary, the text and statutory context of Section 11(b) and relevant case law demonstrate that the provision does not require proof of intent to intimidate, threaten, or coerce voters.

### 1.  Section 11(b)'s Text Does Not Require Proof of Intent.

The plain language of Section 11(b) contains no intent requirement:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote[.]

52 U.S.C. § 10307(b). This language reflects a deliberate choice by Congress in 1965 to broaden the reach of Section 11(b)'s predecessor voter intimidation statute. *See Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) ("Congress legislates against the backdrop of existing law."); *United States v. Brown*, 974 F.3d 1137, 1141-43 (10th Cir. 2020) (analyzing the "statutory context" as part of "traditional tools of statutory construction"). The text of Section 11(b) largely tracks that of Section 131(b) of the Civil Rights Act of 1957, which states that "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person *for the purpose of* interfering with the right of such other person to vote or to vote as he may choose[.]" 52 U.S.C. § 10101(b) (emphasis added).  However, Congress expanded upon Section 131(b)'s scope in the Voting Rights Act by omitting the phrase "for the purpose of" in the statutory language of Section 11(b).  This omission "suggest[s Section] 11(b)'s deliberately unqualified reach." *League of United Latin Am. Citizens v. Pub. Int. Legal Found.*, No. 18-cv-423, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018).

## 2.  The Legislative History Confirms that Section 11(b) Purposefully Omits Any Intent Requirement.

Alabama claims Section 11(b) requires proof of subjective intent to intimidate.  Not so.  First, Defendants' argument finds no support in the statute's text.  And the statute's legislative history confirms that Congress's omission of a subjective intent standard was intentional.  In detailing how Section 11(b) would improve upon its predecessor statute, Attorney General Nicholas Katzenbach, an author of the Voting Rights Act, testified in Congress that Section 131(b)'s "most serious inadequacy" comes from "the practice of some district courts to require the Government to carry a very onerous burden of proof of 'purpose.'"  *Voting Rights Act of 1965: Hearing Before the H. Comm. on the Judiciary*, 89th Cong. 12 (statement of Att'y Gen. Nicholas Katzenbach), https://perma.cc/N9S4-KH2P. "Since many types of intimidation, particularly economic intimidation, involve subtle forms of pressure, this treatment of the purpose requirement has rendered the statute largely ineffective."  *Id.*  Attorney General Katzenbach then noted that under Section 11(b), "no subjective 'purpose' need be shown, in either civil or criminal proceedings, in order to prove intimidation... Rather, defendants would be deemed to intend the natural consequences of their acts." *Id.*; *see also* H.R. Rep. No. 89-439, at 30 (1965), as reprinted in 1965 U.S.C.C.A.N. 2437, 2462 (explaining that, "unlike [Section 131(b)], no subjective purpose or intent need be shown" under Section 11(b)).

16

### 3. Courts Have Confirmed that 11(b) Has No Intent Requirement.

Guided by the statute's text and clear congressional intent, courts have generally interpreted Section 11(b) as not requiring proof of subjective purpose or specific intent. *See, e.g., League of United Latin Am. Citizens*, 2018 WL 3848404, at *4 ("[I]n the absence of plain statutory text, statutory history, or binding case law to the contrary, the Court does not find that a showing of specific intent . . . is required under [Section] 11(b)."); *Wohl I*, 498 F. Supp. 3d at 480 (finding "no explicit requirement of intent" in the provision); *Ariz. Democratic Party*, No. 16-cv-3752, 2016 WL at *4 n.3 ("[T]he plain language of the statute does not require a particular mens rea[.]"); *Daschle v. Thune*, No. 04-cv-4177, ECF No. 6 (D.S.D. Nov. 2, 2004) (granting temporary restraining order and holding that "[w]hether the intimidation was intended or simply the result of excessive zeal is not the issue, as the result was the intimidation of prospective Native American voters"); *Allen v. City of Graham*, No. 20-cv-997, 2021 WL 2223772, at *8 (M.D.N.C. June 2, 2021) (rejecting defendants' argument that Section 11(b) requires proof of specific intent).

Defendants' reliance on the *Fair Fight* decision does not salvage their argument, as nowhere in that decision did the court find that subjective intent was required under Section 11(b). Defs.' Mot. Dismiss 35. Indeed, the language from *Fair Fight* that Defendants rely upon to coin an intent requirement in turn relied

upon *Wohl I,* which found that "intimidation include[s] messages that *a reasonable recipient*[,] familiar with the context of the message[,] would interpret as a threat of injury"—whether physical or nonviolent—"[intended] to deter individuals from exercising their voting rights."  498 F. Supp. 3d at 477 (emphasis added).  As *Wohl I* demonstrates, the crux of a Section 11(b) claim is whether the conduct at issue was *objectively* intimidating, threatening, or coercive to voters by employing a reasonable person standard.  Such an objective standard "avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-69 (2006) (holding that Title VII's retaliation provision employs an objective standard).  Because "[t]hreats, intimidation[,] or coercion may take on many forms," courts must consider all surrounding facts, including "[d]efendants' prior conduct and expressed goals," in evaluating whether the challenged conduct was objectively intimidating, threatening, or coercive.  *Wohl I*, 498 F. Supp. 3d at 484-85.

## CONCLUSION

Section 11(b) may be enforced by private plaintiffs and contains no requirement for proof of subjective intent. The United States respectfully submits this Statement of Interest to assist the Court in evaluating Plaintiffs' Section 11(b) claims.

Date:  October 9, 2024

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*/s/ Kelli M. Slater*
R. TAMAR HAGLER
RICHARD A. DELLHEIM
DANIEL J. FREEMAN
KELLI M. SLATER
Attorneys
Voting Section, Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W
Washington, D.C. 20530
(202) 746-1557

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

/s/ Kelli M. Slater
Kelli M. Slater
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice